# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Concord Energy, LLC, a Colorado Limited liability Company, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No. 4:14-cv-146 |
| vs. | ) ) ) |
| Wightwolf Ventures, LLC a New Mexico Limited liability company, and Richard Wightman, | ) **ORDER DENYING IN PART AND** ) **GRANTING IN PART DEFENDANTS'** ) **MOTION FOR PARTIAL SUMMARY** ) **JUDGMENT** ) ) |
| Defendants. | ) |

Before the Court is the Defendants' "Motion for Partial Summary Judgment Regarding Claims Against Richard Wightman" filed on October 6, 2015. See Docket No. 37. Concord Energy, LLC, filed a response in opposition to the Defendants' motion for partial summary judgment on October 30, 2015. See Docket No. 40. The Defendants filed a reply on November 16, 2015. See Docket No. 45.

## I.     PROCEDURAL POSTURE

In his motion for partial summary judgment, Richard Wightman contends he was never a party to the "Consulting Services Agreement" which provides the basis for Concord Energy, LLC's ("Concord Energy") claims for breach of contract and breach of duty of good faith and fair dealing.. Further, Wightman contends there is no evidence to support Concord Energy's remaining claims for (1) breach of fiduciary duty; (2) unjust enrichment; (3) promissory estoppel; (4) fraudulent inducement; and (5) negligent misrepresentation. Concord Energy's response argues

1

Wightwolf Ventures, LLC, ("Wightwolf Ventures") was not a bona fide company in existence at the time the Consulting Services Agreement was entered into and therefore, Wightman is not shielded by Wightwolf Ventures' corporate veil, thereby subjecting Wightman to the contractual claims of breach of contract and breach of duty of good faith and fair dealing. Alternatively, Concord Energy argues Wightwolf Ventures is the alter ego of Wightman. Wightman contends Concord Energy failed to allege in their complaint that (1) Wightwolf Ventures was not a bona fide company at the time the consulting services agreement was entered into; or (2) Wightwolf Ventures is the alter ego of Wightman, and Concord Energy is therefore prohibited from pursuing those arguments at this stage of litigation. Further, Wightman contends Concord Energy's failure to respond to the Defendants' motion for partial summary judgment regarding Concord Energy's claims of (1) unjust enrichment; (2) promissory estoppel; (3) fraudulent inducement; or (4) negligent misrepresentation, requires entry of judgment in Wightman's favor.

As a threshold matter, the Court finds that Concord Energy failed to allege in its complaint that Wightwolf Ventures was not bona fide company at the time the Consulting Services Agreement was entered into. See Docket No. 1-1. Concord Energy also failed to allege that Wightwolf Ventures functioned as the alter ego of Wightman. The pleading requirements of the Federal Rules of Civil Procedure are designed to provide defendants "fair notice of what the Plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, the plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Beckman v. U.S. Postal Service, 79 F. Supp. 2d 394, 407 (S.D.N.Y 2000). Given the potential for prejudice against a defendant, "it is inappropriate to raise new claims for

the first time in submissions in opposition to summary judgment." Id. (citing Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 170 F.R.D. 111, 119 (S.D.N.Y. 1997)).

In this case, Concord Energy's complaint gives no indication that Wightwolf Ventures was not a legitimate entity capable of entering into a contract, nor does it contain any allegations that Wightwolf Ventures functioned as the alter ego of Wightman. The Court finds that Concord Energy is prohibited from pursuing these legal arguments for the first time at this late stage of the litigation. Accordingly, the Court finds as a matter of law that Concord Energy's contractual claims for breach of contract and breach of good faith and fair dealing as against Wightman must fail. Thus, Defendants' motion for partial summary judgment as to Concord Energy's contractual claims against Wightman is granted.

A second threshold matter is Wightman's contention that Concord Energy has abandoned its claims for: (1) unjust enrichment; (2) promissory estoppel; (3) fraudulent inducement; and (4) negligent misrepresentation, given its failure to brief the merits of each claim. Under D.N.D. Civ. L. R. 7(f), a failure to respond to the Defendants' partial summary judgment motion regarding these claims may be deemed an admission that the motion, limited to those claims, is well taken. The only remaining claim fit for analysis is Concord Energy's claim for breach of a fiduciary duty. The central focus of the dispute is whether a fiduciary relationship existed.

## II.   BACKGROUND

Plaintiff Concord Energy is a Colorado limited liability company which engages in the purchase, sale, and transportation of crude oil in the Bakken oil fields in western North Dakota and eastern Montana. Defendant Richard Wightman claims to own and manage co-Defendant Wightwolf Ventures. On or about February 28, 2014, Concord Energy and Wightwolf Ventures

entered into a "Consulting Services Agreement" in which Wightwolf Ventures agreed to perform consulting and management services for two of Concord Energy's construction projects. See Docket No. 38-5. Wightman signed the agreement on behalf of Wightwolf Ventures.

The first project in the "Consulting Services Agreement" involved dismantling and transferring tanks and equipment for a Lease Automatic Custody Transfer unit ("LACT") station that Concord Energy owned from Elmdale, Montana, to Alexander, North Dakota. Wightman holds himself out as an expert at building LACT unit stations and had done similar projects for Concord Energy as an employee. The second project described in the "Consulting Services Agreement" involved the installation of individual meters that would measure crude oil at truck unload points.

Under the "Consulting Services Agreement," Wightwolf Ventures agreed to "perform Job Cost estimation, permitting, environmental assessments, construction supervision and other work as may be required at [Concord Energy's] request as it relates to projects located in the Eastern, Midcontinent, Western and Rocky Mountain Regions of the U.S." See Docket No. 38-5. The "Consulting Services Agreement" further states:

> [Wightwolf Ventures] agrees, in connection with the work performed pursuant to this Agreement, to exercise the standards of care, skill and diligence normally provided by competent professionals in the performance of services in respect to work similar to the work contemplated by this Agreement. [Wightwolf Ventures] represents that the work and services provided hereunder to [Concord Energy] shall be performed in a skillful, diligent, and workmanlike manner; provided [Wightwolf Ventures] makes no warranties, representations or promises with respect to the information provided. [Wightwolf Ventures] makes no representations, warranties or guarantee as to results, other than those warranties associated with the performance of work in a skillful, diligent, and workmanlike manner.

See Docket No. 38-5. It is undisputed that the "Consulting Services Agreement" is governed by Colorado law. The compensation clause of the "Consulting Services Agreement" states:

4

1. The cost for any special studies or additional briefings shall be negotiated and agreed upon in writing before such activities shall be commenced. [Wightwolf Ventures] shall bill at an hourly rate of $100.00 for work performed by Rick Wightman or WWV Project Managers. Time and charges will be calculated to the ¼ hour. [Wightwolf Ventures] will maintain adequate documentation of time spent on projects to allow the [Concord Energy] to audit the hourly charges and adequate documentation to allow [Concord Energy] to audit any mileage or per diem charges and any other reimbursable expenses approved in advance in writing by [Concord Energy]. Any audits conducted will be solely at [Concord Energy's] expense.

2. Mileage between [Wightwolf Ventures'] Denver office and job sites will be billed at $.85 per mile

3. Per Diem will be billed at $175.00 per day.

4. Billing and time sheets will be presented via e-mail once a week with all invoices due and payable upon 10 days of receipt of invoice.

See Docket No. 38-5.

Concord Energy expected the job to have a total cost between $500,000 and $700,000. See Docket No. 1-1. p. 4. Wightman indicated to Concord Energy the total cost should be in the $700,000-$800,000 range, but could increase depending on certain variables. See Docket No. 38-3, p. 6. In total, Concord Energy paid Wightwolf Ventures $454,849.40 for one job, and $189,889.57 on the second. See Docket No. 1-1, p. 6. Concord Energy has also paid $961,891.95 to third-party contractors engaged by Wightwolf Ventures in Concord Energy's name on the two jobs. According to Wightman, Brad Vodicka, president of crude oil and marketing at Concord Energy, indicated that "We are really in a bind and need to get this done quickly" and "get it done as quick as you can." See Docket No. 38-3, p. 16. Wightman claims the urgency of the projects necessitated higher costs, while Concord Energy claims increased costs were never authorized. See Docket Nos. 38, p. 6; 40, p. 6. Ultimately, Concord Energy claims it was billed higher than expected costs because Wightwolf Ventures hired several independent contractors. See Docket No. 38-3, pp. 16 and 20. These bills and expenses were outlined via invoices. See Docket Nos.

5

38-2, p. 3; 38-3, p. 18. Concord Energy disputes the thoroughness of the invoices, but does not dispute that it paid the invoices. Concord Energy claims it expected Wightman to act as a fiduciary and, therefore, Wightman should have submitted detailed invoices that took into consideration the very best interests of Concord Energy. See Docket Nos. 40-12; 38-2, pp. 3-4. Instead, Concord Energy claims Wightman abused its trust and overbilled throughout the projects.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); See Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party first has the burden of demonstrating an absence of genuine issues of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## IV. **LEGAL DISCUSSION**

The only legal issue for the Court to consider is whether a fiduciary relationship existed between Wightman and Concord Energy. The parties dispute whether Colorado or North Dakota law applies to the claim for breach of a fiduciary duty, but the disagreement over the applicable law is irrelevant to the final disposition. Whether a fiduciary relationship exists is generally a factual question in both Colorado and North Dakota. See Matter of Estate of Lutz, 1997 ND 82, ¶ 32, 563 N.W.2d 90; Mintz v. Accident and Injury Medical Specialists, PC, 284 P.3d 62, 68 (Colo. App. 2010). Concord Energy has produced evidence disputing Wightman's claim that a fiduciary relationship never existed.

Wightman contends he never assumed a duty to act in Concord Energy's best interest. He contends the relationship with Concord Energy was an "arm's length" agreement. Concord Energy contends that, given Wightman's history constructing LACT stations for Concord Energy as both an independent contractor and actual employee, a special relationship had developed in which Wightman assumed a fiduciary duty. Due to Wightman's expertise regarding LACT stations and his prior relationship with Concord Energy, he was given significant discretion to complete the projects. Given these facts, Concord Energy contends that it reposed trust, confidence, and reliance in Wightman to complete the projects with limited guidance and to consider the best interests of Concord Energy when invoicing them for work performed. Wightman contends Concord Energy is a sophisticated company with the ability to exercise proper supervision over his work and to thoroughly review his invoices while the projects were being completed. The Court finds there are a multitude of genuine issues of material fact that are clearly within the province of the jury and, therefore, summary judgment must be denied at this stage. Accordingly, the Court denies

Wightman's motion for partial summary judgment as the record presents genuine questions of material fact concerning the type of relationship Wightman entered into with Concord Energy.

## V. **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendants' Motion for Partial Summary Judgment (Docket No. 37) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED**

Dated this 11th day of March, 2016.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court