# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Concord Energy, LLC, a Colorado Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 4:14-cv-146 |
| vs. | ) ) ) | **ORDER DENYING PLAINTIFF'S** |
| Wightwolf Ventures, LLC, a New Mexico Limited Liability Company, and Richard Wightman, | ) ) ) ) ) | **MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | ) | |

Before the Court is the Plaintiff's "Motion for Partial Summary Judgment Against Defendant Wightwolf Ventures, LLC," filed on November 2, 2015. See Docket No. 42. The Defendant filed a response in opposition to the motion on November 24, 2015. See Docket No. 46. The Plaintiff filed a reply brief on December 11, 2015. See Docket No. 47. For the reasons outlined below, the Plaintiff's motion for partial summary judgment is denied.

## I.     BACKGROUND

Concord Energy, LLC, ("Concord Energy") seeks entry of summary judgment against Wightwolf Ventures, LLC, ("Wightwolf Ventures"), on its claim for breach of contract. Concord Energy claims it was overbilled by Wightwolf Ventures in the amount of $152,476.44 in violation of a consulting services agreement which governed the parties during the completion of two construction projects in 2014.

1

Concord Energy is a Colorado limited liability company which engages in the purchase, sale, and transportation of crude oil in the Bakken oil fields in western North Dakota and eastern Montana. Defendant Richard Wightman claims to own and manage Wightwolf Ventures. On or about February 28, 2014, Concord Energy and Wightwolf Ventures entered into a "Consulting Services Agreement" in which Wightwolf Ventures agreed to perform consulting and management services for two of Concord Energy's construction projects. See Docket No. 38-5. Wightman signed on behalf of Wightwolf Ventures.

The first project in the "Consulting Services Agreement," involved dismantling and transferring tanks and equipment for a Lease Automatic Custody Transfer unit ("LACT") station that Concord Energy owned from Elmdale, Montana, to Alexander, North Dakota. Wightman holds himself out as an expert at building LACT unit stations and had done similar projects for Concord Energy as an employee. The second project described in the "Consulting Services Agreement" involved the installation of individual meters that would measure crude oil at truck unload points.

Under the "Consulting Services Agreement" Wightwolf Ventures agreed to "perform Job Cost estimation, permitting, environmental assessments, construction supervision and other work as may be required at [Concord Energy's] request as it relates to projects located in the Eastern, Midcontinent, Western and Rocky Mountain Regions of the U.S." See Docket No. 38-5. The "Consulting Services Agreement" further states:

> [Wightwolf Ventures] agrees, in connection with the work performed pursuant to this Agreement, to exercise the standards of care, skill and diligence normally provided by competent professionals in the performance of services in respect to work similar to the work contemplated by this Agreement. [Wightwolf Ventures] represents that the work and services provided hereunder to [Concord Energy] shall be performed in a skillful, diligent, and workmanlike manner; provided [Wightwolf Ventures] makes no warranties, representations or promises with respect to the information provided. [Wightwolf Ventures] makes no representations, warranties

or guarantee as to results, other than those warranties associated with the performance of work in a skillful, diligent, and workmanlike manner.

See Docket No. 38-5. It is undisputed that the "Consulting Services Agreement" is governed by Colorado law. The compensation clause of the "Consulting Services Agreement" states:

1. The cost for any special studies or additional briefings shall be negotiated and agreed upon in writing before such activities shall be commenced. [Wightwolf Ventures] shall bill at an hourly rate of $100.00 for work performed by Rick Wightman or WWV Project Managers. Time and charges will be calculated to the ¼ hour. [Wightwolf Ventures] will maintain adequate documentation of time spent on projects to allow the [Concord Energy] to audit the hourly charges and adequate documentation to allow [Concord Energy] to audit any mileage or per diem charges and any other reimbursable expenses approved in advance in writing by [Concord Energy]. Any audits conducted will be solely at [Concord Energy's} expense.

2. Mileage between [Wightwolf Ventures'] Denver office and job sites will be billed at $.85 per mile

3. Per Diem will be billed at $175.00 per day.

4. Billing and time sheets will be presented via e-mail once a week with all invoices due and payable upon 10 days of receipt of invoice.

See Docket No. 38-5.

Concord Energy expected the job to have a total cost between $500,000 and $700,000. See Docket No. 1-1. p. 4. Wightman indicated to Concord Energy the total cost should be in the $700,000-$800,000 range, but could increase depending on certain variables. See Docket No. 38-3, p. 6. In total, Concord Energy paid Wightwolf Ventures $454,849.40 for one job, and $189,889.57 on the second. See Docket No. 1-1, p. 6. Concord Energy has also paid $961,891.95 to third-party contractors engaged by Wightwolf Ventures in Concord Energy's name on the two jobs. According to Wightman, Brad Vodicka, president of crude oil and marketing at Concord Energy, indicated that "We are really in a bind and need to get this done quickly" and "get it done as quick as you can." See Docket No. 38-3, p. 16. Wightman claims the urgency of the projects

3

necessitated higher costs, while Concord Energy claims increased costs were never authorized. See Docket Nos. 38, p. 6; 40, p. 6. Ultimately, Concord Energy claims it was billed higher than expected costs because Wightwolf Ventures hired several independent contractors. See Docket No. 38-3, pp. 16 and 20. These bills and expenses were outlined via invoices. See Docket Nos. 38-2, p. 3; 38-3, p. 18. Concord Energy disputes the thoroughness of the invoices, but does not dispute that it paid the invoices. Concord Energy claims it expected Wightman to act as a fiduciary, and therefore, Wightman should have submitted detailed invoices that took into consideration the very best interests of Concord Energy. See Docket Nos. 40-12; 38-2, pp. 3-4. Instead, Concord Energy claims Wightman abused its trust and overbilled throughout the projects.

## II. LEGAL DISCUSSION

Wightwolf Ventures asserts several defenses in opposition to the imposition of summary judgment, but it is clear that Wightwolf Ventures' claim that Concord Energy ratified the charges throughout the duration of the projects is sufficient at this stage to preclude summary judgment. It is undisputed that Colorado law applies. Ratification is "the adoption and affirmance, either expressly or by implication, by one person of the prior act of another which did not bind him but which was done or professed to be done on his account, whereby the act is given effect as though originally authorized." Platt v. Aspenwood Condominium Assoc., Inc., 214 P.3d 1060, 1065 (Colo. App. 2009) (citing Hayutin v. Gibbons, 338 P.2d 1032, 1036 (Colo. 1959)). The defense of ratification requires that "it must appear that the defrauded party, with full knowledge of the truth respecting the false representations, elected to continue to carry out the agreement." Elk River Associates v. Huskin, 691 P.2d 1148, 1153 (Colo. App. 1984). The ratification of a contract requires a party have "full knowledge of all the material facts of the transaction prior to ratification

4

and also accept the benefits thereof." Hauser v. Rose Health Care Systems, 857 P.2d 524, 529 (Colo. App. 1993). "Ratification, and its requirement of knowledge, is a question of fact." Siener v. Zeff, 194 P.3d 467, 473 (Colo. App. 2008).

The record reveals that Concord Energy received each invoice from Wightwolf Ventures for its review and approval. The payment of each of these invoices creates genuine issues of fact regarding Concord Energy's knowledge of and acquiescence to Wightwolf Ventures' bills. The Court notes that the Defendants will have a difficult burden to show that the defrauded party (Concord Energy) had full knowledge concerning any alleged false representations but still elected to carry out the agreement by paying the invoices. Nevertheless, Colorado law makes it clear that the defense of ratification in this case, although seriously weak, creates a question of fact for the jury to resolve. As such, Concord Energy's motion for partial summary judgment on its claim for breach of contract against Wightwolf Ventures is denied.

### III.  CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Plaintiff's Motion for Partial Summary Judgment (Docket No. 42) is **DENIED.**

**IT IS SO ORDERED**

Dated this 11th day of March, 2016.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court